PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Plaintiff-Appellee,

v.                                                                No. 96-1853

LOCKHEED MARTIN CORPORATION,
AERO & NAVAL SYSTEMS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-95-2995-CCB)

Argued: June 3, 1997

Decided: June 26, 1997

Before RUSSELL, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Russell and Judge Murnaghan joined.

_____

**COUNSEL**

**ARGUED:** Russell Heuer Gardner, PIPER & MARBURY, L.L.P.,
Baltimore, Maryland, for Appellant. Paul D. Ramshaw, EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION, Washington,
D.C., for Appellee. **ON BRIEF:** William L. Reynolds, Gerard D.
St. Ours, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for

Appellant. C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

_____

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Between 1992 and 1994, more than twenty former employees of Lockheed Martin Corporation, Aero and Naval Systems (Lockheed) contacted the Equal Employment Opportunity Commission (EEOC) to allege that Lockheed had selected them for lay off on the basis of age. Some of the former employees charged that Lockheed engaged in a pattern of discrimination against older workers. As part of the EEOC's investigation into the company's practices, the Commission requested that the company identify what computerized personnel files the company had maintained on Aero and Naval Systems employees from 1991 to 1995.

When Lockheed refused to turn over the information voluntarily, the EEOC issued a subpoena for the information. After the company still refused to produce the requested information, the EEOC filed with the district court an application for enforcement of the subpoena. Following a conference call with the parties, the district court issued an order denying enforcement of the subpoena on the ground that the EEOC had not adequately demonstrated that the material sought was relevant to its investigation.

Within ten days, the EEOC timely moved for reconsideration, pursuant to Fed. R. Civ. P. 59(e). Attached to that motion were affidavits of eight EEOC employees located in various regional offices that clarified that the information the Commission sought would permit the EEOC to pursue "a faster, more efficient investigation." The district court granted the EEOC's motion for reconsideration and ordered enforcement of the subpoena.

The court reasoned that the EEOC, in its motion and supporting memorandum, had adequately explained "how a description of Lock-

2

heed's computer filing system would assist" the EEOC investigation -- i.e., by permitting the agency to "perform its investigative function . . . with greater efficiency." The court explained that "armed with the preliminary information it seeks" the EEOC would be able to "frame its subsequent requests with greater specificity and with a greater likelihood of obtaining all the personnel information to which it was entitled." The court found that "the ability to frame more precise requests will help limit the possibility that irrelevant or unnecessary material will be produced for the EEOC to review." The EEOC would then be "in a better position to obtain and analyze whatever information may be available in usable computer form, rather than being required to undertake the more laborious process of searching paper files." The court also noted that the EEOC had provided the court with "new evidence" in the form of affidavits, helping to demonstrate that the information sought was relevant.

Lockheed subsequently moved the district court to stay enforcement of the subpoena pending appeal. The company asserted that the order granting the EEOC's Rule 59(e) motion had been improperly based on newly discovered, previously unavailable evidence, when, in fact, the affidavits were not previously unavailable. The court denied the motion for a stay, finding "little likelihood" that Lockheed would prevail on appeal because enforcement of the subpoena was "virtually mandated by controlling law in the Fourth Circuit." The court recognized that the affidavits might not have constituted newly discovered evidence but found this unimportant because "[m]y ruling granting the EEOC's Rule 59 motion . . . did not rest on the `unavailability' of the evidence." Rather, the court explained that its original order denying enforcement of the subpoena had been "based on an erroneous understanding of the relevance" of the data requested and that permitting that ruling to stand would result in "manifest injustice."

On appeal, Lockheed challenges the district court's grant of the EEOC's Rule 59(e) motion and the court's decision on the merits granting enforcement of the subpoena. We address each argument in turn.

I.

We review an order granting a Rule 59(e) motion under an abuse of discretion standard. See Boryan v. United States, 884 F.2d 767, 771

3

(4th Cir. 1989). Rule 59(e) permits a court to amend a judgment within ten days for three reasons:

> (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993).

Lockheed asserts that the district court based its ruling on the second prong of the Hutchinson test -- "new evidence" -- and that under Boryan, 884 F.2d 767, the affidavits the EEOC submitted in support of its Rule 59(e) motion could not qualify as "new evidence." As the district court recognized, since the EEOC affidavits were available at the time the Commission originally sought enforcement of the subpoena, they may not have constituted newly discovered evidence, providing the proper basis for a Rule 59(e) motion. However, the district court specifically clarified in its order denying stay of the subpoena that "new evidence" was not the basis for its order granting the Rule 59(e) motion. The court explained:

> The affidavits made it clear that the order denying enforcement was based on an erroneous understanding of the relevance of the information sought by the EEOC. In the context of a public agency attempting to fulfill its statutorily mandated purpose, manifest injustice would have been the result of allowing a ruling based on an erroneous and inadequate record to stand.

Thus, the court based its decision to grant the motion for reconsideration on the third prong of the Hutchinson test. That prong permits a court, in its discretion, to grant a Rule 59(e) motion "to correct a clear error of law or prevent manifest injustice." Hutchinson, 994 F.2d at 1081. The district court did not in any way abuse its discretion in granting the Rule 59(e) motion on that basis. Indeed, if, as the district court further found, our precedent "virtually mandate[s]" enforcement of the subpoena in this case, the district court would likely have abused its discretion if it had failed to grant the Rule 59(e) motion.

4

II.

Having determined that the district court did not abuse its discretion in granting the EEOC's Rule 59(e) motion, we turn to the question of whether the district court's order enforcing the subpoena was clearly erroneous. See Reich v. National Eng'g & Contracting Co., 13 F.3d 93, 98 (4th Cir. 1993) (holding that an order enforcing an administrative subpoena is reviewed for clear error).

Generally, a district court's role in enforcing administrative subpoenas is "sharply limited." EEOC v. City of Norfolk Police Dep't, 45 F.3d 80, 82 (4th Cir. 1995) (internal quotations omitted). In order to enforce such a subpoena, a court must be satisfied that the administrative agency has shown that:

> (1) it is authorized to make such investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant.

Id. (quoting EEOC v. American and Efird Mills, Inc., 964 F.2d 300, 302-03 (4th Cir. 1992)). See also NLRB v. Carolina Food Processors, Inc., 81 F.3d 507, 510 (4th Cir. 1996) (noting that a court should enforce an NLRB subpoena "if the information sought is relevant" and "described with sufficient particularly"). Neither in the district court nor on appeal does Lockheed make any claim that the EEOC was not authorized to conduct this investigation or that the Commission failed to comply with statutory due process requirements. Lockheed's sole argument is that the requested information is not relevant.

The Supreme Court has characterized the relevancy requirement as "not especially constraining." EEOC v. Shell Oil Co., 466 U.S. 54, 68 (1983). Rather, "the term `relevant'" will be "generously construed" to "afford[ ] the Commission access to virtually any material that might cast light on the allegations against the employer." Id. at 68-69. We determine relevancy "in terms of the investigation" rather than "in terms of evidentiary relevance." NLRB v. North Am. Van Lines, Inc., 611 F. Supp. 760, 764 (N.D. Ind. 1985) (emphasis omitted) (citing NLRB v. Rohlen, 385 F.2d 52, 57 (7th Cir. 1967)). Courts defer to an agency's own appraisal of what is relevant "so long as it is not `obviously wrong.'" FTC v. Invention Submission Corp., 965 F.2d 1086,

5

1089 (D.C. Cir. 1992) (quoting <u>FTC v. Carter</u>, 636 F.2d 781, 787-88 (D.C. Cir. 1980)).

Applying this standard, we vacated a district court's refusal to enforce an EEOC subpoena for general personnel information; finding such information "relevant and material," we ordered enforcement of the subpoena for "[d]ocuments containing information on the race, sex, and salaries of applicants, hirees, trainees, and promoted employees" during a multi-year period. <u>See EEOC v. Maryland Cup Corp</u>., 785 F.2d 471, 476 (4th Cir. 1986). Moreover, we reached the same conclusion when the EEOC sought not only similar general information, but also tools to enable it to decipher computerized personnel data. In <u>Graniteville Co. v. EEOC</u>, 438 F.2d 32 (4th Cir. 1971), pursuant to an EEOC request, the company provided a computer-generated list of all employees working at one location; the list contained computer codes indicating the department and job assignments of each employee. When the EEOC issued a subpoena for the key to those computer codes, the company refused to comply. We found the key to the computer codes properly subject to the EEOC subpoena, characterizing the key and the other requested information as "all highly relevant." <u>Id</u>. at 41-42. Just as a key to computer codes is relevant, so too is identification of computer files. Although distinct tools, both serve to enhance the EEOC's ability to understand and utilize computer-generated information. The key permitted the EEOC to decipher previously supplied personnel data; identification of computer files allows the Commission to tailor subsequent requests to obtain the most relevant data. Thus, the information sought by the EEOC here is no less relevant than the computer key at issue in <u>Graniteville.</u>

We recognize, of course, that an agency's "broad access to information relevant to inquiries" is not without limits. <u>EEOC v. Ford Motor Credit Co.</u>, 26 F.3d 44, 47 (6th Cir. 1994). Thus, when the EEOC, investigating a single employment discrimination claim, requested enforcement of a subpoena for "the name, sex, date of hire, job title, starting grade level and salary, assignments or promotions with the company including job title, salary, and salary grade, address, telephone number, termination date, and discharge reason" of every employee at a plant over a twelve and a half year period, the Sixth Circuit concluded that the requested information was not rele-

6

vant and refused to issue the subpoena. Id. at 45, 47. The court emphasized both the "substantial" burden placed on the employer by this request as well as the "tenuous" connection much of the information had to a single charge of discrimination twelve years later. Id. at 47.

But, contrary to Lockheed's contention that Ford Motor Credit is "squarely on point," that case differs greatly from the one at hand. Here, despite the fact the EEOC is investigating over twenty claims against Lockheed, the Commission makes no massive request for all personnel records over a 12-year, or even over a 3-year period. Indeed, Lockheed, unlike Ford, does not even argue that production of the requested information burdens it. Moreover, rather than having a "tenuous" connection to the discrimination claims, what the EEOC seeks here -- identification of the computerized personnel information maintained by Lockheed -- is directly relevant to its investigation of those claims.

Such data permits the Commission to better focus its investigation. As the district court found, this information will enable the EEOC to "perform its investigative function" by allowing it to "frame more specific requests" which "will limit the possibility that irrelevant or unnecessary material will be produced for the EEOC to review." The efficient search for relevant information is imperative in a case like this, where the Commission must investigate not one or two claims against the company, but nearly two dozen. Without this means of locating pertinent data, both the EEOC and the employer could be overwhelmed by the sheer quantity of information needed to address each claim treated individually.

For this reason, Lockheed's reliance on United States v. Coopers & Lybrand, 550 F.2d 615 (10th Cir. 1977), is also misplaced. There, the Tenth Circuit expressed concern that the Government was "for the mere sake of its convenience, impos[ing] unnecessary burdens on a taxpayer in conducting an audit or investigation." Id. at 621. Here quite the opposite situation arises. The EEOC is attempting to locate relevant information so that subsequent requests for information are tailored accordingly and the company will not have to respond to overly burdensome requests. Indeed, it is cases like Coopers & Lybrand and Ford Motor Credit that may have prompted the EEOC

7

to adopt its present approach of first seeking information on computerized personnel data. This approach ensures the Commission misses no relevant data, while minimizing the burden on the employer and the extent to which it must provide irrelevant information to the EEOC.

In sum, in asking Lockheed to identify what computerized personnel files it had maintained, the EEOC subpoenaed relevant information, i.e., information that affords it an opportunity to determine what material "might cast light on the allegations against the employer." Shell Oil, 466 U.S. at 69.* Accordingly, the district court's order enforcing the subpoena is

AFFIRMED.

_____
*Indeed, in Shell Oil itself, the lower courts, in rulings not appealed to the Supreme Court, held that the EEOC had the authority to subpoena information "regarding the existence of personnel data on computer file." Shell Oil v. EEOC, 676 F.2d 322, 324 n.2, 326 (8th Cir. 1982).

8